**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:15-cv-57-FDW**

| | |
|---|---|
| **ERIC MORALES,** | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
|    vs. | ) |
| | )    **ORDER** |
| | ) |
| **HOWARD REVIS,** | ) |
| | ) |
|        **Defendant.** | ) |
| | ) |

**THIS MATTER** comes before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1). See 28 U.S.C. §§ 1915(e); 1915A. On March 19, 2015, the Court entered an order waiving the initial filing fee and directing monthly payments to be made from Plaintiff's prison account. (Doc. No. 4). Thus, Plaintiff is proceeding in forma pauperis.[1]

    **I.**     **BACKGROUND**

Pro se Plaintiff Eric Morales is a prisoner of the State of North Carolina, currently incarcerated at Alexander Correctional Institution in Taylorsville, North Carolina.[2] Plaintiff filed this action on March 16, 2015, pursuant to 42 U.S.C. § 1983, naming as the sole Defendant Howard Revis, identified as a supervisor at Marion Correctional Institution in Marion, North Carolina.

---

[1] By order dated May 5, 2015, the Court ordered Plaintiff to submit his grievance related to his claims here to show that he exhausted his administrative remedies. (Doc. No. 5). Based on the grievance submitted by Plaintiff, it appears that Plaintiff has shown that he exhausted his administrative remedies before bringing his claims here.

[2] Plaintiff is serving a life sentence for first-degree murder. See State v. Morales, 215 N.C. App. 392 (2011).

Plaintiff alleges that, while Plaintiff was incarcerated at Marion, Defendant Revis violated Plaintiff's Eighth Amendment rights by failing to protect him from a known threat from another inmate and that Revis "discriminated" against Plaintiff based on Plaintiff's race by refusing to allow Plaintiff to return to his work position after fighting with the other inmate.

Specifically, Plaintiff alleges that on January 24, 2013, inmate John Stone approach Plaintiff and tried to start a fight about work-related issues. (Doc. No. 1 at 3). Plaintiff and inmate Stone both worked in the "sewing plant" in the prison. See (Id. at 5). Plaintiff was at his work station when Stone approached him. Plaintiff alleges that he ignored Stone, and Stone left. (Id. at 3). Plaintiff alleges that Stone returned, however, and again tried to initiate a fight with Plaintiff, threatening Plaintiff several times with bodily harm. (Id.). Defendant Revis "then advised Plaintiff Morales to ignore inmate Stone and to keep working, despite the threats." (Id. at 4). Defendant Revis witnessed Stone's provocation and threats made towards Plaintiff. (Id.). Plaintiff alleges that inmate Stone then attacked Plaintiff from behind and assaulted him. (Id.). After the assault occurred, both Plaintiff and Stone were brought up on disciplinary charges for fighting, and both were fired from their job assignments. (Id. at 4-5). Plaintiff alleges that Defendant Revis subsequently refused to allow Plaintiff back into the sewing plant, but he allowed Stone to begin working again in the sewing plant. (Id.).

Plaintiff alleges that Defendant Revis violated Plaintiff's Eighth Amendment rights by "fail[ing] to protect Plaintiff Morales when threats from inmate Stone of bodily harm were made in the presence of Revis. Revis knew of a risk that Stone made with the threats, but Revis failed to reasonably respond to the apparent risk." (Id. at 6). Plaintiff also alleges that his "right to be free from discrimination" was violated when Defendant Revis refused to allow Plaintiff back into

2

the sewing plant, but allowed inmate Stone to return to work there. (Id.). Plaintiff identifies himself as a Hispanic American, and he alleges that "[u]pon information and belief [Defendant Revis] is racist and inmate Stone wears several white supremacy tattoos which represent a mutual understanding between Revis and Stone. . . . Revis discriminated against Morales when he refused to allow Morales to return to work after he witnessed Morales get attacked from behind, but yet rehired Stone instead." (Id.). For relief, Plaintiff seeks compensatory and punitive damages, declaratory relief, and restoration of his job. (Id. at 6-7).

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

3

## III.     DISCUSSION

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation marks omitted). As such, the Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials "a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. at 833 (quotation marks omitted). Still, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. Id. at 834.

"Deliberate indifference" in this context is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. Id. at 835-37. It is not sufficient that the official should have known of the risk. Id. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." Id. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

Prison officials may escape liability for deliberate indifference claims in several ways. They "might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they

4

knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable" on a failure-to-protect claim. Id. at 845.

Here, the Court finds that Plaintiff sufficiently states an Eighth Amendment failure to protect claim against Defendant Revis based on Revis' alleged failure to protect Plaintiff from an attack by inmate Stone. The Court further finds that, to the extent that Plaintiff is attempting to bring a claim for an equal protection violation against Defendant Revis based on the allegation that Revis re-hired inmate Stone to his position but that Revis did not re-hire Plaintiff based on Plaintiff's race,[3] the Court finds that these allegations survive initial review.[4] See Black v. Lane, 824 F.2d 561, 562 (7th Cir. 1987) (stating that racial discrimination in the assignment of prison jobs violates equal protection).

IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's allegations survive initial review. See 28 U.S.C. §§ 1915(e); 1915A.

2. The Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and identify

---

[3] As noted, Plaintiff identifies himself in the Complaint as a "Hispanic American." (Doc. No. 1 at 6).

[4] To the extent, however, that Plaintiff seeks injunctive relief in the form of restoration of his prior job in the sewing plant at Marion, his claim for injunctive relief is moot because he has been transferred away from Marion.

Defendant in the summonses for service of process, and then return the summonses to the Court.  Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service.  Once the Court receives the summonses from Plaintiff, the Clerk shall then direct the U.S. Marshal to effectuate service upon Defendant.

_____
Frank D. Whitney
Chief United States District Judge